Gary BONNER, Plaintiff,

v.

THE HOME DEPOT, Defendant.

No. CIV.A. 03–0124–CG–C.

United States District Court,
S.D. Alabama,
Southern Division.

May 5, 2004.

Cornelius Robert Heusel, Stephanie C. Moore, Jones, Walker, Waechter, Poitev-

ant, Carrere & Denegre, LLP, New Orleans, LA, for Home Depot.

J. Charles Wilson, Mobile, AL, for Gary Bonner.

## MEMORANDUM OPINION AND ORDER

GRANADE, Chief Judge.

This cause is before the court on the motion and brief in support of defendant, Home Depot U.S.A., Inc.'s ("Home Depot") for summary judgment (Docs. 21 & 22), and plaintiff's response thereto (Doc. 28). Plaintiff claims that he was discriminated and retaliated against by his employer in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act, and 42 U.S.C. § 1981. Plaintiff also claims that his employer violated his rights under the Family and Medical Leave Act of 1993 ("FMLA"). The court finds that plaintiff has not met his burden of demonstrating a *prima facie* case of racial discrimination, disability discrimination, retaliation, or of a FMLA violation. In addition, Home Depot has established legitimate reasons for terminating plaintiff, and plaintiff has failed to produce sufficient evidence to support a finding that defendant's proffered reasons were pretextual. Therefore, Home Depot's motion for summary judgment is due to be GRANTED.

## FACTS

Plaintiff's claims arise out of his employment with defendant, Home Depot. He began working for Home Depot in 1994 as a sales associate in Canton, Michigan. (Bonner depo. p. 52). In 1997, at his own request, plaintiff was transferred to store 865 in Mobile, Alabama. (Bonner depo. p. 54).

Plaintiff was diagnosed with diabetes in 1993, prior to coming to work for Home Depot. (Bonner depo. p. 32). Plaintiff has never had a diabetic episode that caused him to faint, lose consciousness, or be hospitalized. (Bonner depo. pp. 33–36). Plaintiff testified that his diabetes has never affected his work. (Bonner depo. pp. 61–62). Plaintiff currently exercises by walking about two miles, three or four times a week and riding a stationary bicycle about thirty minutes a day. (Bonner depo pp. 35–36).

In July 2000, plaintiff filed an EEOC charge claiming disability discrimination, which he later amended to include a claim for retaliation. (Dickinson decl. attachment L). In January 2001, Home Depot received a letter from plaintiff's physician stating that plaintiff had a diabetic condition and needed to monitor his glucose more carefully. (Dickinson decl. ¶ 12, Attachment N). Home Depot reports that it advised him that he could take breaks whenever he needed and could use the training room to give himself insulin injections whenever he needed as long as he informed a supervisor or manager prior to taking the break. (Dickinson decl. ¶ 11, Attachment M). Plaintiff contends that he was not allowed to take breaks as often as he needed and that he was told if he took more than two breaks a day he would be written up. (Bonner decl. ¶ 5).

In March 2001, Home Depot received another letter from plaintiff's physician stating that plaintiff would need to be able to leave the sales floor approximately three time a day for no more than five minutes to check his glucose. (Dickinson decl. ¶ 12, attachment O). In June 2001, plaintiff and Home Depot resolved plaintiff's disability discrimination and retaliation charge through the EEOC sponsored mediation. (Bonner depo, attachment 7, Dickinson decl. ¶ 13). As part of the resolution, plaintiff agreed to release Home Depot from any and all claims arising out of any transaction or event which occurred

prior to the date of the agreement. (Bonner depo, attachment 7).

In March 2002, the store manager, Chris Hansen, reportedly yelled at plaintiff and put his finger in his face over a write-up plaintiff claims was unwarranted. (Bonner decl. ¶ 11). Plaintiff states that he is "the type of person that talks back to them" and "[t]hey don't like you to talk back." (Bonner depo. p. 160). When asked why he thought they wrote him up, plaintiff stated that he guessed they were coming up with some new plan concerning greeting customers. (Bonner depo. p. 160). Plaintiff believes that other employees were written up that day. (Bonner depo. p. 160). Plaintiff informed management that the customer in question was already upset when he began assisting her and management said they would remove the write-up from his file. (Bonner depo. pp. 165–167, Dickinson Decl. ¶ 36).

Also in March 2002, Home Depot received a letter from another one of plaintiff's physicians advising that plaintiff could not stand for more than an hour and was unable to climb and crawl in small spaces. (Bonner depo. pp. 111–112, attachment 6). Plaintiff requested Home Depot give him a chair to sit on in the hardware department (Bonner depo. pp. 123–124), but Home Depot informed plaintiff that it was not possible because mobility is an essential element and constant requirement of a salesperson's job at the Home Depot store. (Dickinson decl., ¶ 15). Upon Home Depot's request for information about plaintiff's restrictions, plaintiff's physician recommended that plaintiff be allowed to sit and "do other work" for 15 minutes after each hour of standing. (Bonner depo. p. 114, attachment 2). Home Depot informed plaintiff that based on those restrictions, he could not fulfill the essential functions of the job of salesperson because he lacked the mobility necessary to approach and assist customers throughout his shift. (Bonner depo., attachment 3). However, Home Depot offered plaintiff a cashier position at his same rate of pay. (Bonner depo, attachment 3). Plaintiff was told that the cashier's position did not require the same mobility as a salesperson's job and that he would have a stool to sit on as needed and could take a five minute break at least three times a day in addition to his meal break and two fifteen minute breaks. (Bonner depo. p. 118, attachment 3). Plaintiff initially declined the cashier's position, but, after speaking with management, agreed to accept the cashier position. (Dickinson decl. ¶ 22).

Home Depot sent plaintiff to its Cashier College, and plaintiff graduated on June 28, 2002, at the top of his class. (Bonner depo, p. 92). However, on June 28, 2002, plaintiff provided Home Depot with a note from his doctor stating that he could not work as a cashier and that he needed to work in a position that allowed him to sit down for 15 minutes every hour. (Bonner depo. pp. 93–94, attachment 1). Home Depot scheduled a meeting between plaintiff and the Human Resources District Manager, Mr. Panza, to discuss the situation. (Dickinson decl. ¶ 24). Plaintiff was to begin work as a cashier on July 1, 2002. Plaintiff worked a couple hours on that date, but notified management that his legs hurt and that he needed to go to the doctor. (Bonner depo. pp. 119–120, Dickinson decl. ¶ 27). Plaintiff reports that there were no stools available to him up by the cashier. (Bonner depo. pp. 69–71). Plaintiff was driven to a clinic and, upon his return, met with management to discuss his ability to perform the cashier position. (Bonner depo. p. 127, Dickinson decl. ¶ 27). Plaintiff requested that Taiwan Powell, an African–American assistant manager, be present during the meeting and Home Depot complied. (Bonner depo. p. 128). Plaintiff had a note from his

doctor suggesting he be given five days off work, but Mr. Panza did not want to see the note until they finished discussing whether plaintiff could perform the cashier's position. (Bonner decl. ¶ 12). According to plaintiff, he could not perform the cashier's position because he believes that Home Depot makes its cashiers stand in one spot for too long and Home Depot does not have enough cashiers to accommodate his need for bathroom breaks. (Bonner depo. pp. 77–79, 90–91). Plaintiff states that he has to keep checking his blood sugar level and frequently has to go to the restroom, such that he "might have to walk away more often than [he] would have been standing up there." (Bonner depo. p. 79). Plaintiff's doctor's note, stating that he could not perform the cashier position, was based on his statement that he would have to stand for two or three hours as a cashier. (Bonner depo. p. 99). Plaintiff reports that he performed well at the Cashier College because he was allowed to sit down more and he was in a darker room, where "it wasn't in the open space in the front of the store where the sun [was] coming in." (Bonner depo. p. 191). At the meeting, plaintiff reported that his inability to perform the cashier's position, even with a stool, and his inability to stand for more than an hour without sitting for 15 minutes, was permanent. (Bonner depo. p. 217, Dickinson decl. ¶ 28). According to plaintiff, there is no accommodation that he knows of that would enable him to perform the cashier's position. (Bonner depo. pp. 138–140). Mr. Panza informed plaintiff that it did not have any other open jobs at that time that plaintiff was qualified for and which would also meet his job restrictions and, thus, Home Depot could not longer employ plaintiff. (Dickinson decl. ¶ 28).

On July 13, 2002, plaintiff filed a charge with the EEOC alleging race and disability discrimination as well as retaliation. On December 4, 2002, the EEOC issued a notice of right to sue letter. Plaintiff is currently seeking another sales position as a car salesman in Detroit. (Bonner depo. pp. 24–25). Plaintiff claims that a Caucasian employee with high blood pressure and back problems was given a sit-down position because of his medical condition. (Bonner decl. ¶ 9). However, the court is not aware of any evidence to support this contention, other than plaintiff's hearsay statements concerning what the other employee told him. Plaintiff also states that he was permitted to use a stool in the hardware department in 1999, prior to Chris Hansen's arrival at the Mobile store. (Bonner decl. ¶ 8). Plaintiff believes that Mr. Hansen was there to clean up the store because it was a bad store. (Bonner depo. pp. 203–205). Plaintiff admitted that he has never heard Mr. Hansen or anyone else say anything about getting rid of people because of their race or disability. (Bonner depo. 212). Plaintiff does not know who else Mr. Hansen caused to leave the store or whether or not it was because of their race. (Bonner depo. p. 204). Plaintiff admits that he does not know why Home Depot terminated him and states that he just knows he came back from the doctor and was terminated. (Bonner depo. p. 142).

Plaintiff also claims that another employee, Charles Spence, called plaintiff "boy" on the sales floor in front of customers. (Bonner depo. 143). Plaintiff complained and shortly thereafter, Mr. Spence was transferred to another store. (Bonner depo 144–145).

### LEGAL ANALYSIS

#### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir.2002) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249–50, 106 S.Ct. 2505. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251–252, 106 S.Ct. 2505. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir.2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985)).

Once the movant satisfies his initial burden under Rule 56(c), the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir.1994). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The nonmoving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir.1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation and citation omitted).

## II. Plaintiff's Claims

Plaintiff claims Home Depot discriminated against him on the basis of his race, his disability, and in retaliation for making complaints of discrimination and failure to accommodate. Plaintiff also claims that his employer violated his rights under the FMLA. The court will discuss plaintiff's claims in turn below.

## A. Racial Discrimination

A plaintiff may prove discrimination by relying on either direct, circumstantial, or statistical evidence. *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir.1995). Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive 'without inference or presumption'" *Hamilton v. Montgomery County Bd. of Educ.*, 122 F.Supp.2d 1273, 1279 (M.D.Ala. 2000) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir.1998)). As the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an employer' but the actions or statements at issue must 'correlat[e] to the discrimination or retaliation complained of by the employee.' Further, the statements 'must be made by a person involved in the challenged decision' and must not be subject to varying reasonable interpretations.

*Id.* (quoting *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1274 (M.D.Ala.1998)). The court finds that none of the evidence submitted by plaintiff qualifies as direct evidence of racial discrimination in employment. Plaintiff has in fact offered very little evidence at all concerning racial discrimination. Plaintiff alleges that an employee called him "boy" on one occasion and asserts that he has been yelled at and unfairly written up. Clearly this does not constitute direct evidence of racial discrimination.

Plaintiffs may attempt to show discrimination based on circumstantial evidence through the application of the *McDonnell Douglas* burden-shifting analysis established by the Supreme Court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first raise an inference of discrimination by establishing a *prima facie* case. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–28 (11th Cir. 1997)).

> In order to make out a prima facie case of discriminatory termination on account of race, plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997) (citations omitted)."

*Potts v. Conecuh–Monroe Counties Gas Dist.*, 2000 WL 1229838, *17 (S.D.Ala.2000) It is undisputed that plaintiff is a member of a protected class. It is also undisputed that plaintiff was terminated, which is clearly an adverse job action. However, it is not at all clear whether plaintiff was qualified for the position. Plaintiff in fact claimed that he was unable to perform either the salesperson's position or the cashier's position considering the physical requirements inherent in those positions. Nor has plaintiff demonstrated that Home Depot treated similarly situated employees outside his classification more favorably. Plaintiff contends that he could not comply with the conditions of the salesperson or cashier position because he could not stand for more than an hour at a time and because he needed to take breaks to monitor his glucose level and go to the bathroom. Plaintiff also stated that he could not perform the cashier work because of the light from the sun coming into the store where the cashiers are located.

Plaintiff has also failed to demonstrate that Home Depot treated similarly situated employees outside his classification more favorably. There is no evidence

or reason to believe that the conditions which reportedly made plaintiff's position difficult were not imposed on other, non-black, employees in those positions. There is no evidence that any non-black employee was treated differently in any way. Plaintiff has not established a *prima facie* case.

■ Even if plaintiff had established a *prima facie* case, defendant would still be entitled to summary judgment on this claim. If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is exceedingly light." *Hamilton,* 122 F.Supp.2d at 1280 (quoting *Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994) (internal quotations omitted)). If the defendant proffers a legitimate reason for the employment decisions, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. *Id.* "At the pretext stage, in order to survive summary judgment, plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." *Miller v. Bed, Bath & Beyond, Inc.,* 185 F.Supp.2d 1253, 1270 (N.D.Ala.2002) (citing *Combs,* 106 F.3d at 1538). Plaintiff may do this "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." *Id.* (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons ... that a reasonable factfinder could find them unworthy of credence.' " *Hamilton,* 122 F.Supp.2d at 1281 (quoting *Combs,* 106 F.3d at 1539). The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ In satisfying the ultimate burden of proving that the adverse employment action was on account of race, a plaintiff need not establish that race was the sole reason for the action, but that it was a determinative factor in the employer's decision. *See Anderson v. Savage Laboratories, Inc.,* 675 F.2d 1221, 1224 (11th Cir.1982) (citing *Haring v. CPC International, Inc.,* 664 F.2d 1234, 1239–40 (5th Cir.1981)). However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman,* 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). It is not appropriate for either the plaintiff or this court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." *Chapman,* 229 F.3d at 1030. An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

■ In this case, Home Depot has proffered a legitimate reason for terminating plaintiff and plaintiff has not offered sufficient evidence that those reasons were pretextual. Plaintiff provided doctors notes that stated that he could not perform the salesperson's position or the cashier's position. With no acceptable positions available, Home Depot was forced to terminate plaintiff. The fact that one of Home Depot's employee's called plaintiff "boy" on one occasion does not provide

sufficient evidence of pretext for a reasonable jury to find that Home Depot's stated reasons for termination are merely a cover for discrimination. In fact, Home Depot's quick response to plaintiff's complaint (transferring the employee who allegedly made the remark) is evidence that the decision makers had no racial bias. Therefore, defendant's motion for summary judgment is due to be granted as to plaintiff's claims of racial discrimination.

## B. Disability Discrimination

■ Under the Americans with Disability Act ("ADA") 42 U.S.C. § 12112(a) an employer may not:

> discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

A plaintiff alleging discrimination in violation of the ADA bears the burden of establishing a *prima facie* case, including that he is disabled. *See Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 447 n. 3 (11th Cir.1996). To establish a *prima facie* case of disability discrimination, plaintiff must demonstrate that he (1) has a disability, (2) is a qualified individual with a disability, and (3) was subjected to unlawful discrimination because of his disability. *Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220 (11th Cir.1999). Unlawful discrimination may also consist of a failure to provide a reasonable accommodation for a disability if that accommodation would enable the employee to perform an essential function of the job. *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249 (11th Cir.2001).

■ Home Depot denies that plaintiff is a qualified individual with a disability or even that he is "disabled" under the ADA. Under the general definition section of the ADA the term "disability" is defined as follows:

> (A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) A record of such impairment; or
>
> (C) Being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff asserts that he is disabled under section (A) above. Thus, to qualify as disabled, plaintiff must show (1) he suffers from a physical or mental impairment (2) which affects a "major life activity," (3) to a "substantial" degree. *See Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998); *Bercovitch v. Baldwin School, Inc.,* 133 F.3d 141, 155 (1st Cir.1998). Plaintiff maintains that his diabetes limits a major life activity by requiring that he not stand for long periods of time. Plaintiff asserts that his "diabetes, by its very nature, requires that his blood glucose level be maintained at a certain level, or 'within certain parameters,' because otherwise he can not function." (Doc. 28, p. 2). However, plaintiff does not qualify as disabled under the ADA merely because he has diabetes. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Although if uncontrolled the illness could certainly affect the major life activities of an individual, "[t]he Supreme Court has made it clear that the determination whether an individual is disabled for ADA purposes is to be made with reference to measures that mitigate the impairment." *Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir.2000) (citing *Sutton,* 527 U.S. at 475, 119 S.Ct. 2139). As the Supreme Court explained in *Sutton:*

> The use or nonuse of a corrective device [or medication] does not determine whether an individual is disabled; that

determination depends on whether the limitations an individual with an impairment actually faces are in fact substantially limiting.

*Sutton,* 527 U.S. at 488, 119 S.Ct. 2139. Otherwise, "[a] diabetic whose illness does not impair his or her daily activities would therefore be considered disabled simply because he or she has diabetes." *Id.* at 483, 119 S.Ct. 2139. Such an approach "is contrary to both the letter and the spirit of the ADA." *Id.* at 484, 119 S.Ct. 2139. "An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one . . . , in which symptoms vary widely from person to person."

*Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 185, 122 S.Ct. 681, 685, 151 L.Ed.2d 615 (2002).

■ In *Toyota Motor Mfg., Kentucky, Inc. v. Williams:*

the Supreme Court reversed the Sixth Circuit decision that found a former employee disabled because she could no longer perform all her manual tasks at work due to carpal tunnel syndrome. *See Toyota,* 534 U.S. at 192–93, 122 S.Ct. at 689. Curtailing previous case law defining "major life activities," the Court held that "to be substantially limiting in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* 122 S.Ct. at 691. Specifically, the Court stated that "[w]hen addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, [FN18 The Court noted that testimony that the *Toyota* plaintiff could brush her teeth, wash her face, bathe, tend her garden, fix breakfast, do laundry, and

pick up around the house was the very type of evidence the Sixth Circuit should have focused on, as these seemed the type of manual tasks of central importance to people's daily lives. *See Toyota,* 122 S.Ct. at 693.] not whether the claimant is unable to perform the tasks associated with her specific job." *Id.* at 693.

As a result, this decision creates additional obstacles for many plaintiffs in disability cases, particularly those alleging discrimination in the workplace. Under *Toyota* it appears that courts now have greater discretion in determining what is a major life activity and what interference with that activity is substantial enough to constitute a disability.

*Stedman v. Bizmart, Inc.,* 219 F.Supp.2d 1212, 1220–1221 (N.D.Ala.2002). The only major life activity plaintiff claims is substantially limited in this case is the life activity of working.

In analyzing such a disability claim, the Supreme Court has instructed that "the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege that they are unable to work in a broad class of jobs." *Sutton v. United Air Lines,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Although the *Sutton* plaintiffs alleged that their employer regarded their impairment as preventing them from working as global airline pilots, the Court held that disqualification from working in a single job does not support the claim that a plaintiff has a substantially limiting impairment. *See id.* at 493, 119 S.Ct. 2139. In order to prevail, therefore, plaintiff must prove that his diabetes precluded him from a broad range of jobs. *See id.* at 491, 119 S.Ct. 2139; *see also Pritchard v. Southern Co. Serv.,* 92 F.3d 1130, 1133 (11th Cir.1996) (stating "nor does the inability to perform a single, particu-

lar job ... constitute a substantial limitation in the major life activity of working").

*Id.* The term "substantial" also suggests a limitation that is "considerable" or "specified to a large degree." *See Sutton,* 527 U.S. at 491, 119 S.Ct. 2139 (citing Webster's Third New International Dictionary 2280 (1976) and 17 Oxford English Dictionary 66–67 (2d ed.1989)).

 In making this determination, courts look to: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or expected long-term impact of the impairment. *See Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F.3d 907, 911 (11th Cir.1996). The court finds that in this case, plaintiff has not met his burden of demonstrating that his diabetes substantially limits him from performing a class or broad range of jobs. Plaintiff testified that his diabetes never affected his work and that he is currently seeking another sales position as a car salesman. Thus his limitations do not prevent him from working any salesperson's job, just the salesperson's job at a large volume warehouse-style environment where the employee must be on his feet for long periods of time. Home Depot offered plaintiff a job as a cashier to allow plaintiff to sit periodically. Plaintiff has not demonstrated why he could not perform that job, if a stool were available for his use. Plaintiff testified that he could not perform the cashier's position because he believes Home Depot makes its cashiers stand in one spot for too long and Home Depot does not have enough cashiers to accommodate his need for bathroom breaks. Plaintiff's doctor's note prohibiting him from working the Home Depot cashier position was apparently based on plaintiff's rendition of what the position would entail. Plaintiff told his doctor he would have to stand up in one spot for at least two to three hours at a time. The doctor was apparently unaware that Home Depot had advised plaintiff that he could have a stool to sit on as needed. Plaintiff received training at Home Depot's Cashier's College and did very well. Plaintiff claims he did well at training because he was permitted to sit more and because the room was darker and he was not bothered by the sun coming in as he would be at the Home Depot store. These limitations are related to the specific conditions at the Home Depot store. Plaintiff has not demonstrated that his limitations would substantially affect his ability to work as a cashier in general, only under the specific conditions at the Home Depot store.

 Plaintiff also argues that by permitting plaintiff to take breaks, Home Depot acknowledged plaintiff's need for accommodation.

Under subsection (C), individuals who are "regarded as" having a disability are disabled within the meaning of the ADA. *See* § 12102(2)(C). Subsection (C) provides that having a disability includes "being regarded as having," § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," § 12102(2)(A). There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is

not so limiting. These misperceptions often "resul[t] from stereotypic assumptions not truly indicative of ... individual ability."

See 42 U.S.C. § 12101(7). See also School Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) ("By amending the definition of 'handicapped individual' to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment"); 29 CFR pt. 1630, App. § 1630.2(1) (explaining that the purpose of the regarded as prong is to cover individuals "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities").

Sutton, 527 U.S. at 489–490, 119 S.Ct. 2139. The court recognizes that "[a]s with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1230 (11th Cir. 1999) (citing Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1327 (11th Cir.1998)). "To show that he was regarded as substantially limited in his ability to work, plaintiff must prove that [defendant] considered [him] as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training, skills and abilities." Stedman, 219 F.Supp.2d at 1222 (quoting

Cash v. Smith, 231 F.3d 1301, 1306 (11th Cir.2000) internal quotations omitted).

■ There is no evidence that Home Depot entertained any negative misperceptions of plaintiff's abilities. The evidence indicates that Home Depot in fact regarded plaintiff as capable of performing as a cashier at the store. Home Depot sent him to training for the position and expected him to fill that position. Moreover, there is no evidence that Home Depot believed plaintiff·was incapable of performing any job other than the specific sales or cashier positions available at Home Depot. As discussed above, the inability to perform the cashier position or the salesperson position at Home Depot does not constitute a substantial limitation of a broad range of jobs.

Because plaintiff has not shown that he is disabled under the ADA, he cannot demonstrate a prima facie case. Moreover, even if plaintiff could demonstrate a prima facie case, his disability discrimination claim would fail for the same reason his racial discrimination claim fails.[1] Home Depot has proffered legitimate nondiscriminatory reasons for terminating plaintiff and plaintiff has not sufficiently demonstrated that those reasons are pretextual. Neither has plaintiff suggested a reasonable accommodation that would allow plaintiff to perform the cashier position. Therefore, summary judgment is due to be granted in favor of Home Depot as to his claim of discrimination under the ADA.

### C. Retaliatory Discharge Claim

■ Plaintiff alleges that the defendant discharged plaintiff in retaliation for

---

1. Plaintiff has not offered any direct evidence of discrimination based on his disability. In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination by using the McDonnell–Douglas burden shifting analysis discussed above in reference to plaintiff's claim of racial discrimination. See Wascura v. City of South Miami, 257 F.3d 1238, 1242 (11th Cir.2001) (citing Hilburn, 181 F.3d at 1226); see also Richio v. Miami–Dade County, 163 F.Supp.2d 1352 (S.D.Fla.2001).

making complaints of discrimination and failure to accommodate. "[T]he same analytical framework applies to retaliation claims as applies to other employment discrimination claims, including the availability of the *McDonnell Douglas* presumption." *Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir.1999) (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.1993)).

To establish a *prima facie* case of retaliatory discharge the plaintiff must show:

(1) that he engaged in a statutorily protected expression;

(2) he suffered an adverse employment action; and

(3) there was a causal link between the adverse action and his protected expression.

*Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir.2001) (citations omitted). The plaintiff's filing of complaints claiming discrimination or failure to accommodate is clearly a protected expression and being terminated is certainly an adverse employment action. However, plaintiff has not established a causal link between the two. In fact, plaintiff admitted that he does not know why he was terminated and that he is merely speculating about the cause. Moreover, even if plaintiff could establish a *prima facie* case, he again does not have sufficient evidence to rebut Home Depot's legitimate nondiscriminatory reason for terminating him.

### D. FMLA

Plaintiff does not specifically respond to Home Depot's claim for summary judgment on plaintiff's FMLA claim. To the extent plaintiff's arguments regarding his other claims can be used to support his FMLA claim, the court finds the evidence lacking. It is questionable whether plaintiff even requested FMLA leave. It is also questionable whether Home Depot knew of plaintiff's request or intent to request leave at the time the decision to terminate

plaintiff was made. Plaintiff reports that he was discussing the fact that there were no acceptable positions available when he produced the request for time off from work. Mr. Panza did not want to see the note until they finished discussing whether plaintiff could perform the cashier's position. Once it was determined that plaintiff was not capable of performing the cashier's position, plaintiff was terminated. Even if plaintiff had established a *prima facie* case, which the court finds he has not, plaintiff has offered no evidence to demonstrate that Home Depot's stated reasons were merely pretext.

### *CONCLUSION*

For the foregoing reasons, the court finds that the motion of Home Depot U.S.A., Inc. for summary judgement is due to be, and is hereby, **GRANTED.**