[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 19, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-11695
Non-Argument Calendar
_____

D. C. Docket No. 96-03257-CV-RRA-M

ANTHONY ASH,
JOHN HITHON,

                                                    Plaintiffs-Appellants,

EDDIE BULLOCK, et al.,

                                                    Plaintiffs,

        versus

TYSON FOODS, INC.,
a corporation,

                                                    Defendant-Appellee,

THOMAS HARTLEY, an individual,

                                                    Defendant.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 19, 2005)**

Before DUBINA, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Appellants Anthony Ash and John Hithon, black males, (collectively "the appellants") appeal the district court's orders (1) granting Tyson Foods, Inc.'s renewed motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b), on their 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 discrimination claims, and (2) alternatively granting Tyson's motion for a new trial, pursuant to Fed. R. Civ. P. 50(c), on the basis that the jury's punitive and compensatory damages awards were excessive and unsupported by the evidence. We affirm in part and reverse and remand in part.

During the summer of 1995, the appellants, who were superintendents at Tyson's Gadsen, Alabama poultry plant, applied for two shift manager positions at the Gadsen plant. Thomas Hatley, the Gadsen plant manager, decided to hire Randy King and Steve Dade, white males, for the two shift manager positions. Following Hatley's decision to choose King and Dade for the shift manager positions, the appellants filed suit, claiming, *inter alia*, that their failure to be promoted to the shift manager positions violated their rights under Title VII and 42 U.S.C. § 1981.

A. *Judgment as a Matter of Law*

On appeal, the appellants initially argue that the district court should not have granted Tyson's renewed motion for judgment as a matter of law because it had denied the motions for judgment as a matter of law at trial and there were no intervening events to justify the court to change its mind. The appellants then contend that Tyson's reasons for not promoting them were pretextual. In support of the pretext argument, the appellants argue that: (1) Hatley provided shifting reasons for his decision not to hire them; (2) Hatley used qualifications that (a) were not required by company policy, and (b) excluded the appellants; (3) Hatley only checked references for black candidates and did not review King's or Dade's performance reviews or personnel files; (4) Hatley lied about a college degree requirement for the shift manager position; (5) Hatley offered King the shift manager position before interviewing Hithon for the job; (6) Hatley hand-picked Dade for the shift manager position despite telling the superintendents that he would hold the position open before deciding on the promotion; (7) Tyson failed to prove that the Gadsen plant was losing money when Ash and Hithon were superintendents; and (8) Hatley's decision was made in an atmosphere where black employees were treated differently, including Hatley's cool demeanor toward the appellants and his statements referring to the appellants as "boys."

We review a district court's grant of a Fed. R. Civ. P. 50(b) renewed motion

3

for judgment as a matter of law *de novo* and apply the same standard as the district court. *See Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000). In reviewing the evidence, we draw all factual inferences and resolve all credibility determinations in favor of the non-moving parties, which in this case are Ash and Hithon. *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1344-45 (11th Cir. 2000). However, "the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts[,]" and must show "[a] substantial conflict in the evidence . . . before a matter will be sent to the jury." *Abel*, 210 F.3d at 1337. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (citation and internal quotation omitted). "A motion for judgment as a matter of law will be denied only if reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Abel*, 210 F.3d at 1337 (citation, internal punctuation and quotation omitted).

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."

4

42 U.S.C. § 2000e-2(a)(1). Under 42 U.S.C. § 1981, every person in the United States:

> shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). This statute is interpreted as "afford[ing] a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-60, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). When a case of intentional discrimination is brought under either Title VII or § 1981, we employ the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), framework. *See Cooper v. Southern Co.*, 390 F.3d 695, 724 n.16 (11th Cir. 2004).

Under *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, the plaintiff must first establish a *prima facie* case of discrimination, which a plaintiff establishes in a failure to promote case by showing that: (1) "he is a member of a protected class"; (2) "he was qualified for and applied for the promotion"; (3) "he was rejected"; and (4) "other equally or less qualified employees who were not members of the protected class were promoted." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997) (citations omitted). Once a *prima facie*

5

case is developed, the defendant has the burden of producing a legitimate, non-discriminatory reason for its decision. *See Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106. Once these two burdens have been met, the *McDonnell Douglas* framework disappears, and the sole issue is whether the employer acted discriminatorily. *Id.* at 142-43, 120 S.Ct. at 2106. The plaintiff always has the ultimate burden to prove that discrimination existed and may establish discrimination "by showing that the employer's proffered explanation is unworthy of credence." *Id.* (citation and internal quotation omitted). Therefore, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. at 2109. However, an employer would be entitled to judgment as a matter of law where "the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* (citations omitted).

We have held that isolated general racial comments "are not *direct* evidence of discrimination because they are either too remote in time or too attenuated because they were not directed at the plaintiff, . . . [. However,] we have not held that such comments can never constitute <u>circumstantial</u> evidence of

6

discrimination." *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998) (citation omitted). When a racial comment is provided as evidence, we examine whether the comment "when read in conjunction with the entire record, [is] circumstantial evidence of those decision makers' discriminatory attitude. If so, the court must then determine whether such circumstantial evidence, along with other evidence . . ., might lead a reasonable jury to disbelieve [the employer's] proffered reason for [not promoting the employee]." *Id.* at 1292. While the use of "boy" when modified by a racial classification like "black" or "white" is evidence of discriminatory intent, *see Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998) (indicating that the use of "that white boy" was evidence of a discriminatory attitude), the use of "boy" alone is not evidence of discrimination. *See Ruby v. Springfield R-12 Public School Dist.*, 76 F.3d 909, 912 (8th Cir. 1996) (holding that referring to the appellant as "boy" and comments about clothing and blacks committing more crimes were not evidence of pretext); *Bonner v. Home Depot*, 323 F.Supp.2d 1250, 1258-59 (S.D. Ala. 2004), *aff'd*, No. 04-12887 (11th Cir. 2004) (finding that a single reference to a plaintiff as "boy" was not evidence of pretext).

We have noted that "[s]tanding alone, deviation from a company policy does not demonstrate discriminatory animus." *Mitchell v. USBI Co.*, 186 F.3d 1352,

1355-56 (11th Cir. 1999) (citation omitted). However, we have also observed that deviation from company policy can be circumstantial evidence of discrimination, especially where the rules were bent or broken to give a non-minority applicant an advantage. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998); *see also Berg v. Fla. Dept. of Labor and Employment Sec., Div. of Vocational Rehab.*, 163 F.3d 1251, 1255 (11th Cir. 1998) (suggesting that failure to adhere to or inconsistent application of policies may be circumstantial evidence of discrimination where there is a showing that the policies were applied to others). Additionally, a plaintiff's showing that an employer's reason for not following a company policy was pretextual does not establish intentional discrimination without a finding that the employer acted because of race. *See Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 528 (11th Cir. 1983).

Finally, we have indicated that the issue in discrimination cases is not whether one employee is better qualified than another because we do not sit in judgment of an employer's decision. *See Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004). As a result, "[i]n a failure to promote case, a plaintiff cannot prove pretext by simply showing that []he was better qualified than the individual who received the position that []he wanted." *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). Pretext can be established through

comparing qualifications only when "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." *Cooper*, 390 F.3d at 732 (citation and internal quotation omitted). However, an employee's showing that the employer hired a less qualified candidate is probative of whether the employer's reason is pretextual, but not proof of pretext. *Lee*, 226 F.3d at 1253.

After reviewing the record in the present case, we conclude that Ash did not present sufficient evidence for a reasonable jury to find that Tyson discriminated against him because none of the evidence applicable to his claims establishes discrimination. However, we conclude that Hithon presented a sufficient case of discrimination because he demonstrated that Hatley interviewed him after Hatley had already hired King, indicating that Hatley's stated reasons for rejecting Hithon – his lack of a college degree, his position as a manager at a financially troubled plant, and his lack of experience outside of the Gadsen plant – were pretextual. This evidence of pretext along with Hithon's *prima facie* case of discrimination was sufficient for the jury to decide whether Tyson discriminated. Accordingly, we conclude that the district court did not err in granting Tyson's motion for judgment as a matter of law on Ash's claims, but the court erred in granting the motion for judgment as a matter of law on Hithon's claims.

B. *New Trial*

Because the district court did not err in granting judgment as a matter of law in favor of Tyson on Ash's claims, the issue of whether the court should have alternatively granted a new trial is moot for Ash. However, because we conclude that the district court erred in granting a motion for judgment as a matter of law on Hithon's claims, we turn to his appeal of the district court's alternative grant of a new trial.

On appeal, Hithon argues that the district court erred in alternatively granting Tyson's motion for a new trial because: (1) the court's order provided no basis for its decision, making it impossible for him to appeal specific grounds for the decision or to allow it to be reviewed at the appellate level; (2) the court's decision that the ratio between the punitive and compensatory damages awards was premature as the court failed to determine back pay and attorney's fees; and (3) he presented sufficient evidence to support the jury's award of compensatory damages. Also, Hithon adopts his district court brief, contesting the district court's decision to grant a new trial.

1. *Standard of Review*

We review a district court's grant of a new trial for an abuse of discretion. *F.D.I.C. v. Stahl*, 89 F.3d 1510, 1514 (11th Cir. 1996). In employing the abuse of discretion standard for granting new trials, we use a more stringent approach. *Id.*

10

The district court "should grant a motion for a new trial when

> the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. . . . Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great--not merely the greater--weight of the evidence."

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (internal citations and quotations omitted).

2. *Punitive Damages*

"[P]unitive damages 'are awarded solely to punish defendants and deter future wrongdoing.'" *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 616 (11th Cir. 2000) (quoting *Walters v. City of Atlanta*, 803 F.2d 1135, 1147 (11th Cir. 1986). We have held that punitive damages are available under § 1981. *See Claiborne v. Illinois Cent. R. R.*, 583 F.2d 143, 154 (5th Cir. 1978);[1] *see also Johnson v. Railway Express Agency, Inc.*, 421 U.S. at 460, 95 S.Ct. at 1720 (stating in dictum that punitives are available in § 1981 actions). Under Title VII, punitive damages are also available if the plaintiff shows the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

federally protected rights of an aggrieved individual." *See* 42 U.S.C. § 1981a(b)(1). However, where a plaintiff has both Title VII and 42 U.S.C. § 1981 discrimination claims, the plaintiff is not constrained by the damage caps under Title VII and may recover under § 1981. *See* 42 U.S.C. § 1981a(a)(1), (b)(4). "[A]ny case law construing the punitive damages standard set forth in § 1981a . . . is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim." *See Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 441 (4th Cir. 2000).

As a result, punitive damages are available under 42 U.S.C. § 1981 when an "employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30, 119 S.Ct. 2118, 2122, 144 L.Ed.2d 494 (1999) (quotation omitted). "'[M]alice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* at 535, 119 S.Ct. at 2124. "Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'" *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d at 611 (citation omitted) (alteration in original). Intentional discrimination will not rise to the level of maliciousness or recklessness where the

employer: (1) is "unaware of the relevant federal prohibition"; or (2) "discriminates with the distinct belief that its discrimination is lawful." *Kolstad*, 527 U.S. at 536-37, 119 S.Ct. at 2125. A plaintiff does not have to show egregiousness or outrageous discrimination to prove punitive damages although this is one form of proof. *Id.* at 538-39, 119 S.Ct. at 2126. Not only must the plaintiff show maliciousness or recklessness, but he must also impute liability to the employer. *Id.* at 539, 119 S.Ct. at 2126. The Supreme Court has held that an employer will not be held liable for punitive damages where "the discriminatory employment decisions of managerial agents . . . are contrary to the employer's good-faith efforts to comply with [42 U.S.C. § 1981]." *See id.* at 545, 119 S.Ct. at 2129 (quotation omitted). In the absence of evidence of a good-faith effort to comply with § 1981, an employer will be liable for actions of its agent when the agent served the employer in a managerial capacity and committed the intentional discrimination at issue while acting in the scope of employment. *See id.* at 542-43, 119 S.Ct. at 2128.

As initial matters, we first conclude that Hithon first cannot adopt arguments from his district court brief contesting Tyson's motion for a new trial. *See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004) ("reject[ing] the practice of incorporating by reference arguments

made to district courts, and . . . hold[ing] that [the appellant] . . . waived the arguments it ha[d] not properly presented for review"). Second, Hithon's argument that the district court failed to give reasons for its decision to grant a new trial as required by Fed. R. Civ. P. 50(c) is without merit because the court stated its reasons by determining that the compensatory and punitive damages awards were "against the great weight of the evidence and [were] outrageously excessive and shocking to the judicial conscience."

We conclude that the district court did not abuse its discretion in granting a new trial on the basis of the jury's punitive damages award because the evidence was insufficient to support an award of punitive damages as Hithon has failed to present any evidence that Hatley knew he was violating federal law when he failed to promote Hithon. Moreover, because Hithon failed to establish that Hatley acted with malice or reckless indifference to his federal rights, we conclude that the district court did not err in granting a new trial on the punitive damages award.

3. *Compensatory Damages*

This court has stated that "[a]lthough compensable damage must be proven, . . . general compensatory damages, as opposed to special damages, need not be proven with a high degree of specificity." *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999). "Compensatory damages may be inferred from the

14

circumstances" or proven through testimony. *Id.* (citation and internal quotation omitted). Evidentiary shortcomings go to the amount of loss, not to the issue of damages. *Id.* Under § 1981, compensatory damages encompass: (1) emotional harms such as humiliation and insult; (2) intangible, psychological injuries; or (3) financial, property, or physical harms. *Id.* (citations omitted). There is no requirement that emotional damages be proven through medical evidence or expert testimony. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir. 1997) (holding that "medical or other expert evidence was not required to prove emotional distress and that there was sufficient evidence of emotional distress") (persuasive authority).

After reviewing the record, we conclude that the district court did not abuse its discretion in granting the motion for a new trial on the compensatory damages award because Hithon provided insubstantial evidence to support the jury's $250,000 compensatory damages award.

For the foregoing reasons, we affirm the district court's grant of judgment as a matter of law in favor of Tyson on Ash's discrimination claims. We reverse the district court's grant of judgment as a matter of law in favor Tyson on Hithon's discrimination claims. However with respect to Hithon, we affirm the district court's decision to alternatively grant a new trial because there was insufficient

15

evidence to support the jury's punitive damages award and the compensatory damages award was excessive. We remand this case for the district court to conduct further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**