**Diana M. SHEPPARD, Plaintiff,**

v.

**SEARS, ROEBUCK & CO., A foreign corporation, Defendant.**

No. 03–22995–CIV.

United States District Court,
S.D. Florida.

April 29, 2005.

Christine Lynne Wilson, Scott Stephan Allen, Jackson Lewis LLP, Miami, for Sears, Roebuck and Co., a foreign corporation, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [**DE 31**], filed October 14, 2004. Plaintiff filed opposition to Defendant's motion [**DE 40**] on November 12, 2004. Defendant filed a reply brief [**DE 45**] on November 29, 2004. The Court held oral argument on the summary judgment motion on March 25, 2005.

Plaintiff's Complaint alleges four counts of discrimination on the basis of age and sex: Count One, for age discrimination under the Age Discrimination in Employment Act ("ADEA"), Count Two, for age discrimination under the Florida Civil Rights Act ("FCRA"), Count Three for sex discrimination under Title VII of the Civil Rights Act ("Title VII"), and Count Four for sex discrimination under the FCRA. The Defendant seeks summary judgment as to all four counts. Upon a review of the parties' arguments, relevant case law, and the record, I conclude that Defendant's motion should be granted and summary judgment entered for the Defendant as to all counts of the Plaintiff's complaint.

### Facts [1]

#### A. The Defendant

Defendant Sears, Roebuck & Co. ("Sears") is a retailer of apparel, home and

William Lawrence Petros, Justin B. Elegant, Petros & Elegant, Coral Gables, for Diana M. Sheppard, plaintiff.

1. The following facts are derived from the parties' Local Rule 7.5 statements. The Plaintiff responded to the Defendant's Local Rule 7.5 statement and additionally provided a separate statement of facts entitled "Material Facts as to Which There Exists a Genuine Issue to be Tried." References to Plaintiff's 7.5 Statement ("Plaintiff's 7.5") refer to the statement of facts that is responsive to the Defendant's Local Rule 7.5 Statement and not to the separate statement of facts ("Plaintiff's Material Facts"). Any factual disputes between the parties are noted.

automotive products and services with retail stores throughout the United States. (Def's 7.5 ¶ 1). Sears operates a customer service center in Miami, Florida, out of which its service technicians are dispatched to repair various types of appliances at its customers' houses and places of business. (Def's 7.5 ¶ 1).

## B. The Circumstances of Plaintiff's Employment

Sears hired the Plaintiff, Diana Sheppard ("Sheppard") (d.o.b.: 9/1/1948), in April 1978 as a service technician. (Def's 7.5 ¶ 9). In that capacity, Sheppard would visit customers' homes to repair washers and dryers. (Def's 7.5 ¶ 9). Plaintiff's immediate supervisor was District Technical Manager Bennett Woods ("Woods") at all times relevant to Plaintiff's claims. (Def's 7.5 ¶ 10). Woods described Sheppard as a "good technician." (Plaintiff's Material Facts ¶ 2). Woods reports to District Technical Manager Horacio Villazon ("Villazon"). (Def's 7.5 ¶ 10). Villazon likewise described Sheppard as "an excellent technician, good associate." (Plaintiff's Material Facts ¶ 3).

Sears' customer service technicians service customers' products in their homes or places of business. (Def's 7.5 ¶ 3). Accordingly, service technicians are required to drive a company vehicle between Sears or his/her house and customer service sites in order to make necessary repairs. (Def's 7.5 ¶ 3). Driving is an important part of the service technician's job. (Def's 7.5 ¶ 9).

Sears maintains a Product Repair Services Driver's Operating and Safety Manual ("safe-driving policy"), which Sheppard received and reviewed during her employment with Sears. (Def's 7.5 ¶ 4). Sears' safe-driving policy provides, in part:

> If you are involved in a word related motor vehicle collision, *regardless of injury or damage,* an investigation will be conducted to determine if you caused or contributed to the collision.
>
> If it is determined that you caused or contributed to the collision, you will be subject to disciplinary action, up to and including termination. The decision to terminate an associate for causing or contributing to an accident shall be made on a case-by-case basis.

(Def's 7.5 ¶ 4) (emphasis in original).

Sears also maintains a "1–800 How Am I Driving" program, called "fleet safe," that provides a means for the public to provide feedback regarding Sears' drivers using a toll-free number. (Def's 7.5 ¶ 5). Sears' company-owned vehicles, including the vehicle driven by Sheppard, bear a "safe-driving decal" that provides the toll-free number. If Sears receives an unsafe driving incident report or fleet safe complaint about one of its drivers where the complainant leaves his or her name and telephone number, the driver's manager or supervisor is contacted. (Def's 7.5 ¶ 6). Sears' safe-driving policy provides as follows with respect to the handling of fleet safe complaints: "If your vehicle was in the area at the time of the incident, your manager or supervisor will review the reported incident with you. If it is determined that the incident involves ... [a] report of unsafe driving ... you will be subject to disciplinary action, up to and including termination." (Def's 7.5 ¶ 6). A technical manager is required to meet with the employee to obtain her side of the story and verify that she was in the area at the time of the alleged incident. (Plaintiff's Material Facts ¶¶ 9, 10).

Sears' safe-driving policy also provides the following "non-exhaustive list of events that will result in an associate's loss of his/her privilege to drive for Sears or immediate termination":

> Motor Vehicle Collisions—During the most recent five-year period, you cause

or contribute to 3 motor vehicle collisions ... while driving a Sears' vehicle and/or while on company business.

Serious Vehicle Collision—You cause or contribute to a motor vehicle collision that results in serious bodily harm or death, significant financial liability or negative publicity.

Unsafe Driving Incidents—You have had 3 or more unsafe driving incidents within the last 18 months. (A motor vehicle collision that you cause or contribute to is also considered to be an unsafe driving incident.)

(Def's 7.5 ¶ 7).

Once an employee is involved in a work-related motor vehicle incident, an investigation is to be conducted to determine if the employee "caused or contributed" to the incident. (Plaintiff's Material Facts ¶ 6). The parties dispute whether the severity of an employee's accident is relevant in the application of Sears' safe-driving policy. (Def's 7.5 ¶ 8, Plaintiff's 7.5 ¶ 8).

C. The Plaintiff's Driving Record

On July 29, 1997, Sheppard was involved in an automobile accident while driving a Sears vehicle. She received a write-up as a result of the accident, which stated:

On July 29, 1997, Ms. Diana Sheppard was involved in a vehicular accident. It appears the associate caused or contributed to the accident by not yielding the right of way to oncoming traffic while making a right-hand turn on a red light. Ms. Sheppard and Mr. Machado, her supervisor, reviewed together the contents of the Drivers' Operating & Safety Manual, pages 8 and 9. These manual pages cover the consequences of a second and third accidents [sic]. A copy of these pages was issued to Ms. Sheppard.

(Def's 7.5 ¶ 11). The documentation regarding this incident was apparently misplaced from Sheppard's file, and Sheppard was later told by her supervisor, Bennett Woods, that this 1997 accident was not considered as part of her driving record. (Plaintiff's 7.5 ¶ 11).

On May 16, 2001, Sheppard was involved in a second automobile accident while driving a Sears vehicle. (Def's 7.5 ¶ 12). The police issued Sheppard a ticket and did not issue a ticket to the other driver involved in the accident. (Def's 7.5 ¶ 12). Sheppard pleaded "nolo contendere" in the subsequent traffic court proceedings and paid a fine. (Def's 7.5 ¶ 12). On May 17, 2001, Sheppard's supervisor, Bennett Woods, issued a written warning because of the accident. (Def's 7.5 ¶ 13; Plaintiff's Material Facts ¶ 13). The warning placed Sheppard on notice that she could lose her driving privileges if she was involved in another accident. (Def's 7.5 ¶ 13). Woods did not provide Sheppard with a copy of the notice until January 4, 2002. (Plaintiff's Material Facts ¶ 14). Sheppard obtained an affidavit from a bus driver who was in the area that day and saw what happened in order to prove that she was not involved in the accident. (Plaintiff's Material Facts ¶ 14). The parties dispute, however, whether the May 16, 2001 accident was removed from Sheppard's record.

On January 3, 2002, Sheppard was involved in an accident when the wheel of her Sears van rubbed against the door of another driver's vehicle. (Def's 7.5 ¶ 14). Sheppard was issued a ticket for careless driving, which she paid. (Def's 7.5 ¶ 14). On February 6, 2002, Woods issued another written warning to Sheppard which stated: "On 1/04/02 Sheppard while backing her Sears vehicle in [a] customer drive way she was turning her front wheel and [her] tire scratched customer car door. Consequences of Repeat Ethics/Policy Violation(s): Losing Your Privilege to drive For Sears. Diana Sheppard is aware during the most recent five-year period, you cause or contribute to 3 motor vehicle colli-

sions while driving a Sears's [sic] vehicle." (Def's 7.5 ¶ 14).

On April 22, 2002, Sheppard was involved in an accident while making a left-hand turn at an intersection when she was struck by an oncoming car that she did not see. (Def's 7.5 ¶ 15). Sheppard received a traffic ticket for a violation of right-of-way, which she paid. (Def's 7.5 ¶ 15). After the April 22 accident, Woods issued Sheppard a termination notice on May 7, 2002 recommending that Sears revoke Sheppard's driving privileges because of the accidents in which she was involved within a five-year period. (Def's 7.5 ¶ 16). After Sheppard complained that she was not at fault for the May 16, 2001 accident, Woods' supervisor, District Technical Manager Horacio Villazon, agreed not to revoke her driving privileges and instead opted to give Sheppard one more chance. (Def's 7.5 ¶ 16). Sheppard states that she was told the May 16, 2001 accident would not be counted against her, but does not dispute that the accident was not expunged from her driving record. (Def's 7.5 ¶ 19; Plaintiff's 7.5 ¶ 19). As a result of the accident, Sheppard received a "final warning" on May 9, 2002. (Def's 7.5 ¶ 17). The final warning stated:

1. You must take a safe drivers course, which you take on your own time and Sears will reimburse you for the expense of the course. This must be done by June 14th.

2. If another accident occurs and you are found to have caused or contributed to the accident you will lose your driving privilege as per our Safety Manual policy.

3. If you are involved in a Fleet Safe Incidents [sic] which is verified you will also lose your driving privilege as per our Safety Manual.

(Def's 7.5 ¶ 18). In conjunction with her receipt of the final warning, Sheppard signed a "Performance Plan for Improvement" acknowledging that the steps in the warning had been fully explained to her. (Def's 7.5 ¶ 20).

On November 12, 2002, Sears received a fleet safe complaint about Sheppard's driving. (Def's 7.5 ¶ 21). The caller complained about Sheppard's driving and stated that Sheppard cut him off as she switched lanes, forcing him to slam on his brakes to avoid hitting Sheppard's vehicle. (Def's 7.5 ¶ 21). Woods spoke with the caller and confirmed with Sheppard that she was in the vicinity of the caller at the time in question. (Def's 7.5 ¶ 21). Woods completed an Ethics/Policy Violation notice dated November 12, 2002 in which Woods recommended termination. (Plaintiff's Material Facts ¶ 23).

On November 13, 2002, the day after he received the fleet safe complaint about Sheppard, Woods notified Villazon about the fleet safe complaint. On or about November 14, 2002, Villazon and Woods met with Sheppard to discuss her driving record. (Def's 7.5 ¶ 22). Sheppard did not specifically recall the incident about which the caller had complained, but admitted that she had been in the area at the time in question. (Def's 7.5 ¶ 22).

On November 15, 2002, Villazon met with then Regional Human Resources Manager Michael Stubbs to review Sheppard's driving record. (Def's 7.5 ¶ 24). Stubbs determined that, based upon Sheppard's driving record, Sears had no choice but to revoke her driving privileges. (Def's 7.5 ¶ 24). Stubbs confirmed the decision with Sears' home office and Director of Human Resources, Steve Nielson. (Def's 7.5 ¶ 24).

On November 18, 2002, Villazon and Woods met with Sheppard to inform her that Sears was revoking her driving privileges. (Def's 7.5 ¶ 25). Villazon advised Sheppard that a routing clerical job would be available after consultation with Jim

Rogers. Villazon also offered to investigate retail positions and indicated that Sears would pay Sheppard for the day and not remove her from the Sears payroll until she decided whether to accept a non-driving position with Sears. (Def's 7.5 ¶ 27). Although Sheppard failed to apply for any non-driving positions with Sears between December 2002 and April 2003, she was again offered a routing clerk position in April 2003 which she accepted in May 2003. (Def's 7.5 ¶¶ 28, 29). Sheppard continued to work as a routing clerk until April 2004, when Sears closed the routing facility where Sheppard worked as part of a nationwide consolidation of its routing facilities. (Def's 7.5 ¶ 31).

## D. Sears's Treatment of Other Employees

### 1. Joseph Johnson

Sears employs Joseph Johnson (d.o.b.: 11/28/1949) as a service technician in Miami. (Def's 7.5 ¶ 32). Johnson was involved in three accidents on the following dates: September 7, 1999, November 17, 2000, and December 21, 2000. (Def's 7.5 ¶ 32). Johnson denies being at fault for the November 17, 2000.[2] (Def's 7.5 ¶ 32). On or about January 18, 2001, Johnson's immediate supervisor, Ernie Garcia, recommended that Sears revoke Johnson's driving privileges. (Def's 7.5 ¶ 33). Johnson met with Villazon, who, in lieu of revoking Johnson's driving privileges, issued Johnson a "final warning" on January 22, 2001 and advised Johnson that he would revoke his driving privileges if he caused or contributed to another vehicle accident. (Def's 7.5 ¶ 33). Johnson has not subsequently been involved in any unsafe driving incidents. (Def's 7.5 ¶ 33).

### 2. Raul Villate

Sears employs Raul Villate (d.o.b.: 11/11/69) as a service technician. (Def's 7.5 ¶ 35). Villate was involved in two accidents within a five-year period—on July 11, 2001 and July 18, 2001. (Def's 7.5 ¶ 35). Villate received a final warning after the second accident. (Def's 7.5 ¶ 35). Villate admits fault for the July 11, 2001 accident, but denies fault for the July 18, 2001 accident. (Def's 7.5 ¶ 35). Sears received a fleet safe complaint about Villate on March 23, 2002 wherein a caller complained that Villate made a "u-turn stopping all traffic" while smoking a cigarette. (Def's 7.5 ¶ 36). Villate disputed the caller's complaint on the basis that he did not make the u-turn as alleged and does not smoke. (Def's 7.5 ¶ 36). Other than the two accidents and fleet safe complaint, Villate has not been involved in any additional driving incidents within a five-year period. (Def's 7.5 ¶ 37). Grise Alfonso, and not Villazon, was Villate's direct supervisor during the period in question. (Def's 7.5 ¶ 38).

### 3. Angel Vanegas

Sears employed Angel Vanegas (d.o.b.: 7/2/1937) but revoked his driving privileges because of his driving record. (Def's 7.5 ¶ 39). On or about May 9, 2002, Vanegas received a "final warning" after he was found to have caused or contributed to two accidents and after Sears had received two fleet safe complaints regarding his driving. (Def's 7.5 ¶ 39). Sears revoked Vanegas's driving privileges on or about June 6, 2002 after receiving another fleet safe complaint regarding his driving on June 4, 2002. (Def's 7.5 ¶ 39). Sears offered Vanegas a transfer to a non-driving position selling electronics, which he accepted. (Def's 7.5 ¶ 39).

**2.** There is no record evidence as to whether or not Johnson was ticketed for any of the accidents, including the November 2000 accident for which he denies being at fault.

### 4. Dennis Frieboes

Sears employed Dennis Frieboes (d.o.b.: 2/20/1943) but revoked his driving privileges because of his driving record. (Def's 7.5 ¶ 40). On or about June 14, 2001, Frieboes received a "final warning" because he was found to have caused or contributed to three motor vehicle accidents on July 6, 1998, May 4, 2000, and June 9, 2001. (Def's 7.5 ¶ 40). Sears revoked Frieboes's driving privileges after he caused or contributed to another accident. (Def's 7.5 ¶ 40). Frieboes opted to retire after his driving privileges were revoked. (Def's 7.5 ¶ 40).

### 5. Other Female Employees

At the time Sheppard was hired by Sears, there were three female service technicians in Miami–Dade County. (Plaintiff's Material Facts ¶ 4). During Sheppard's employment at Sears, Sears promoted one of the female service technicians, Anne Ellis, to a management position which she held until her retirement. (Def's 7.5 ¶ 41). While Sheppard was employed at Sears, there were approximately 30 to 40 female service technicians in the region of the Regional Human Resource Manager, which encompasses Florida, Alabama, Puerto Rico, and parts of Georgia and South Carolina. (Def's 7.5 ¶ 42). Seven female Human Resources Managers reported directly to the Human Resources Manager in 2004. (Def's 7.5 ¶ 42).

### Standard of Review

■ Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evi-

dence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Bishop v. Birmingham Police Dep't,* 361 F.3d 607, 609 (11th Cir.2004).

■ The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir.2001).

■ In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-movant. *Denney,* 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### Analysis

■ Plaintiff's complaint alleges discrimination on the basis of sex and age under Title VII, the ADEA, and the FCRA. These statutes make it unlawful for an employer to discharge any individu-

al, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's sex and/or age. The same legal standard is applied by courts analyzing claims under Title VII, the ADEA, and the FCRA. *See Byrd v. Richardson–Greenshields Secs., Inc.*, 552 So.2d 1099, 1102 (Fla.1989); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir.2001). The plaintiff must initially establish a prima facie case of discrimination. Once the plaintiff has done so, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for subjecting the plaintiff to an adverse employment action. One the defendant has done so, the burden shifts back to the plaintiff to show that the reasons offered by the defendant were merely pretext. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir.2002).

### I. The Prima Facie Case

Under the relevant standard for all three statutes, the initial burden falls upon the plaintiff to establish a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The prima facie case is the same for claims brought under federal and state antidiscrimination laws. *Lawrence v. Wal–Mart Stores, Inc.*, 236 F.Supp.2d 1314, 1323 n. 11 (S.D.Fla.2002) ("Because the law construes [Title VII and the FCRA] the same way, the Court will limit its discussion to the Title VII claims with the understanding that its analysis also applies to the § 1981 and FCRA claims."); *MacLean v. City of St. Petersburg*, 194 F.Supp.2d 1290, 1301 (M.D.Fla.2002) (stating the FCRA is patterned after Title VII, so decisions construing Title VII apply to FCRA claims).

■ The plaintiff may establish her prima facie case on the basis of direct evidence of discrimination or by relying on circumstantial evidence to prove discriminatory intent. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). To establish a prima facie case using direct evidence, a plaintiff must present "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." *Id.; see also Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990) (citing *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989)). Put another way, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate ... constitute direct evidence." *Id.* (citing *Carter*, 870 F.2d at 582). As the Plaintiff conceded at oral argument, this case is not a direct evidence case. Therefore, Plaintiff must establish a prima facie case under *McDonnell Douglas* using circumstantial evidence.

■ A plaintiff establishes a prima facie case of discrimination using circumstantial evidence by showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. *Maynard v. Board of Regents of the Division of Universities of the Florida Department of Education*, 342 F.3d 1281, 1289 (11th Cir. 2003). A plaintiff must demonstrate each of these four elements to fulfill the prima facie case. *Id.* Demonstrating the prima facie case creates an inference that the employer acted with discriminatory intent. *Id.*

In this case, it is without dispute that the Plaintiff has established the first two element of the prima facie case. *See* Defendant's Memorandum of Law at 7 n. 4 (conceding that Plaintiff can establish the first two elements of the prima facie case).

However, the Defendant argues that the record demonstrates no dispute of material fact as to whether the Plaintiff was qualified nor a dispute as to whether the Plaintiff was treated less favorably than similarly situated individuals outside her protected class.

### A. Whether Plaintiff Was Qualified For Her Job

 Sears argues that Sheppard was not qualified to do the job because an important requirement of her job was that she be able to drive safely and without incident to and from the facilities she was meant to service as a technician. It is undisputed that driving to and from facilities was an important aspect of Plaintiff's position as a service technician. However, Sheppard successfully performed as a service technician for over twenty years and was deemed a good technician by her supervisors, Bennett Woods and Horacio Villazon. The Eleventh Circuit has inferred that an employee who has maintained a long tenure at a certain position is qualified by virtue of the employee's longevity with her employer. *See, e.g., Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir.1999) ("[I]n cases where a plaintiff has held a position for a significant period of time, qualified for that position sufficient to satisfy the prima facie case can be inferred.") (citing *Young v. General Foods Corp.*, 840 F.2d 825, 830 n. 3 (11th Cir.1988)); *Clark v. Coats & Clark*, 990 F.2d 1217, 1227 (11th Cir.1993). Furthermore, while the Plaintiff may have had numerous accidents over a five-year period, she remained a licensed driver qualified by the state to drive; no record evidence indicates that she had her license suspended or revoked by the state, and the record affirmatively demonstrates that she paid each ticket she received. It may have gone against Sears's business judgment to provide Sheppard with a Sears vehicle to travel to and from job locations, but that does not necessarily render her unqualified to do the job. While her qualifications may be in dispute, Sheppard has satisfied her burden to produce evidence that she was qualified in fulfillment of the third element of the prima facie case.

### B. Whether Plaintiff Was Treated Less Favorably Than a Similarly Situated Individual Outside Her Protected Class

 Even after demonstrating the first three elements of the prima facie case, Sheppard must produce evidence of the fourth element—that she was treated less favorably than a similarly situation person outside her protected class. In this endeavor, Sheppard has failed. "A plaintiff does not shift the burden to the defendant under *McDonnell Douglas* merely by stating that he was fired or treated unfavorably. *McDonnell Douglas* requires the plaintiff to establish a prima facie case which includes identifying an individual who replaced him or was treated better than he who was not a member of his protected class." *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir.2005).

 Sheppard has not identified a male or younger individual who was involved in the same number of traffic accidents and complaints who received more favorable treatment. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citation omitted). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* The Eleventh Circuit requires that "the

quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.; see also Morris,* 402 F.3d at 1082; *but see Alexander v. Fulton County, Georgia,* 207 F.3d 1303, 1334 (11th Cir.2000) ("Moreover, the law does not require that a 'similarly situated' individual be one who has 'engaged in the same or nearly identical conduct' as the disciplined plaintiff. Instead, the law only requires 'similar' misconduct from the similarly situated comparator.").

Despite the fact that different panels of the Eleventh Circuit have characterized the "similarly situated" requirement differently in dicta, the essence of the requirement that the comparator be similarly situated is evident from its application in various cases. For example, in *Morris,* a physician alleged that he was terminated on the basis of age and gender, while his employer, the Emory Clinic, claimed he was fired because the Clinic received numerous complaints about the physician's off-color remarks and excessively forceful patient examinations. 402 F.3d at 1079–80. The plaintiff argued that the Clinic retained younger female physicians even though the Clinic received similar complaints about them. The plaintiff presented evidence that patients had complained repeatedly that younger female physicians were negligent in patient care, failed to return phone calls, and lacked promptness in examining patients. *Id.* at 1080. The Eleventh Circuit held that the numerous complaints about younger female physicians were not sufficiently similar to the complaints concerning the plaintiff's off-color remarks and forceful examinations. *Id.* at 1082. The court stated that "[w]ithout showing that a comparable female received 'nearly identical' complaints," the court could not adequately compare the Clinic's actions towards the plaintiff with its treatment of younger female physi-

cians. *Id.* Accordingly, the court held that under *McDonnell Douglas,* the plaintiff could not connect his termination to his sex or age.

Similarly, in *Silvera v. Orange County School Board,* 244 F.3d 1253 (11th Cir. 2001), the Eleventh Circuit found that a white employee and black employee were not similarly situated when the black employee was terminated after his employer learned that he had been arrested four times for violent offenses, including child molestation and battery. Although the white employee had also been arrested once for child molestation and once for DUI, the court held that the black and white employees were not similarly situated "because the number of arrests on [the black employee's] record exceeds by a factor of two ... those of his would-be comparator." *Id.* at 1259. The court also noted that the black employee's arrests were for violent offenses, whereas the white employee's arrests were not, and the black employee's arrests were more recent than those of his white counterpart. *Id.* at 1260. Despite the fact that both employees had been arrested more than once, the court held that the employees were not similarly situated.

In this case, Sheppard argues that she was treated less favorably than several younger male employees who were also involved in traffic accidents and received complaints about their driving. However, none of the employees Sheppard cites as examples of similarly situated are actually similarly situated. For example, Raul Villate had only two accidents and one complaint, whereas Sheppard had four accidents and one complaint. Although Sears agreed not to consider Sheppard's July 29, 1997 accident in revoking her driving privileges, the fact that Sears was willing to overlook that accident is merely indicative of Sears's leniency towards Sheppard.

Even without considering Sheppard's first accident, Sheppard was involved in three accidents before she was given her final warning. Villate was involved in only two accidents before he was given a final warning. Both Sheppard and Villate denied fault for one of their accidents, so the fact that Sheppard denies fault for her May 2001 accident does not render her driving record safer than Villate's. After Sheppard received a final warning, she received a fleet safe complaint and was terminated. Villate has not received a fleet safe complaint since being given a final warning; accordingly, Villate has not been treated any better than Sheppard. Joseph Johnson similarly received a final warning after his third incident. Johnson was involved in three accidents. Since receiving his final warning, Johnson has not been involved in any accidents and has not received any fleet safe complaints. There is no record evidence that either Johnson or Villate were ticketed for any of their accidents. Furthermore, at age 54, Johnson is barely one year younger than Plaintiff. Sears's treatment of Johnson and Villate was not in any way more favorable than its treatment of Sheppard. Sears also has demonstrated that it treated two younger male employees either the same or *more* strictly than Sheppard; it terminated Angel Vanegas's driving privileges after only two accidents and two fleet safe complaints, and it provided Dennis Frieboes with a final warning after three accidents and revoked his driving privileges after his fourth accident. Accordingly, Plaintiff has not met her burden to show the final element of her prima facie case.[3]

## II. Pretext

Even had the Plaintiff established a prima facie case of discrimination, the Defendant has met its intermediate burden to show a legitimate nondiscriminatory reason for its employment decision. Sears claims to have terminated Sheppard because of her numerous accidents and because she received a fleet safe complaint after receiving a final warning. This reason is independent of her age and sex. Accordingly, the burden shifts back to the Plaintiff to show that the Defendant's stated rationale is pretextual. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. This demonstration merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

A plaintiff must demonstrate by a preponderance of the evidence that the reason asserted by the employer is mere pretext. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff must "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Zaben v. Air Prods. & Chems., Inc.,* 129 F.3d 1453, 1457 (11th Cir.1997). A plaintiff may demonstrate an employer's proffered rationale for subjecting the plaintiff to an adverse employment action was pretextual in several ways. She may either directly persuade the court that a discriminatory reason more likely motivated the employer or may demonstrate "such weaknesses, implausibilities, inconsistencies, incoheren-

---

3. Sheppard has not introduced any evidence as to who replaced her as service technician. She states that she was replaced by Douglas Brown, Carlos Smith, Hector de law Cruz, Richard Reed, and/or Silvio Garcia, all of whom were younger males, but the only record evidence indicates that her position was not "filled" by any of these individuals. They were merely hired at various points after her driving privileges had been revoked. That Sheppard cannot isolate any one of the five individuals as her replacement is indicative of the fact that her job was not actually filled by any one person and Sheppard has not met her burden of production as to this element.

cies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997); *Jackson v. State Of Alabama State Tenure Com'n,* 405 F.3d 1276, at 1289, 2005 WL 851935, at *12 (11th Cir. Apr.14, 2005).

 One of the indirect ways a plaintiff may show pretext is by providing evidence of deviation from company policy as circumstantial evidence of discrimination, especially where the rules were bent or broken to give a non-minority applicant an advantage. *See Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 644 (11th Cir.1998); *Berg v. Fla. Dept. of Labor and Employment Sec., Div. of Vocational Rehab.,* 163 F.3d 1251, 1255 (11th Cir.1998) (suggesting that failure to adhere to or inconsistent application of policies may be circumstantial evidence of discrimination where there is a showing that the policies were applied to others). However, demonstrating deviation from company policy alone is not sufficient; "a plaintiff's showing that an employer's reason for not following a company policy was pretextual does not establish intentional discrimination without a finding that the employer acted because of [sex or age]." *Ash v. Tyson Foods, Inc.,* 2005 WL 902044 (11th Cir. Apr.19, 2005) (citing *Clark v. Huntsville City Bd. of Educ.,* 717 F.2d 525, 528 (11th Cir.1983)).

 Finally, in evaluating the record for evidence of pretext, the court's inquiry is limited to the employer's mindset, as the "pretext inquiry is concerned with the employer's perception of the employee's per-

formance, not the employee's own beliefs." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1332–33 (11th Cir.1998). As stated by the Eleventh Circuit, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000).

The Plaintiff has not demonstrated any evidence that her termination may have been related to her age or sex. Sheppard alleges that the following evidence demonstrates that her driving record was a pretextual basis for her termination which was actually motivated by her age and sex: (1) she denied fault for numerous accidents but was terminated anyhow in violation of Sears's company policy; and (2) younger male employees were retained despite being involved in numerous accidents and receiving numerous fleet safe complaints. Neither of these arguments satisfy the standard for demonstrating pretext.

I have already explained that Sheppard was not treated less favorably than any similarly situated employees. Accordingly, her argument that less favorable treatment demonstrates pretext fails.[4] *See, e.g., Rojas v. Florida,* 285 F.3d 1339, 1344 (11th Cir.2002) (concluding that plaintiff had not shown pretext since she could point to no man in a similar position and with a similar employment history who was treated better than she was).

Regarding Sheppard's driving record, the undisputed facts demonstrate that Sheppard was involved in accidents while

---

**4.** Even if Sheppard did establish a prima facie case of discrimination, that alone would not suffice to pass the additional hurdle of pretext. "[A] plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant." *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1334 (11th Cir.1998) (quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir. 1987)).

driving a Sears vehicle on July 29, 1997, May 16, 2001, January 3, 2002, and April 22, 2002. It is further undisputed that Sheppard was ticketed by the police for the accidents on May 16, 2001, January 3, 2002, and April 22, 2002 and paid those tickets. Although Sheppard provided an affidavit from a bus driver who was in the area on the date of the May 16, 2001 accident which attested that Sheppard did not cause the accident, Sheppard pled nolo contendere for the May 16, 2001 accident. The ticket arising from the January 3, 2002 accident was for "careless driving." Sheppard received a final warning on May 9, 2002 which stated that if she was involved in another accident or received a fleet safe complaint, she would lose her driving privileges. It is undisputed that on November 12, 2002, Sears received a fleet safe complaint regarding Sheppard's driving.

Sheppard argues that Sears told her that the May 16, 2001 incident would not be counted against her, and the fact that it was later counted against her demonstrates discrimination. This is not the type of evidence that the Eleventh Circuit has suggested may show pretext. In fact, Sears's safe-driving policy would have permitted Sears to terminate Sheppard's driving privileges after her third accident; that Sears waited until Sheppard's fourth accident to issue a final warning, and even then provided Sheppard with an additional chance, is evidence that Sears did not act out of animus towards Sheppard's sex or age.

█ Sheppard argues that Sears deviated from company policy by terminating her before consulting with her about the fleet safe complaint issued against her. The undisputed facts demonstrate that her immediate supervisor, Brooks, *recommended* that she be terminated before consulting with her, but she was not *actually terminated* until after both Brooks and his supervisor Villazon consulted with Sheppard. Furthermore, Sheppard has provided no evidence that the alleged deviation from company policy related to her age or sex. Evidence of deviation from company policy with nothing tying that deviation to a protected trait is insufficient to show pretext. *See Ash v. Tyson Foods, Inc.,* 129 Fed.Appx. 529, 2005 WL 902044 (11th Cir. Apr.19, 2005) (citing *Clark v. Huntsville City Bd. of Educ.,* 717 F.2d 525, 528 (11th Cir.1983)).

█ Finally, Sheppard denies responsibility for one of her accidents, the May 16, 2001 accident for which she plead nolo contendere, and does not recall any facts surrounding the fleet safe complaint incident. However, the proper inquiry is not whether the employer's reason for an adverse employment action is correct, but rather, whether the employer reasonably believed the employee committed the infraction which led to the adverse employment action. *EEOC v. Total Sys. Servs., Inc.,* 221 F.3d 1171 (11th Cir.2000) (affirming summary judgment when employer had a "good faith belief" that the plaintiff employee lied in an investigation which resulted in her termination, even when the employee denied lying); *Chaney v. So. Ry. Co.,* 847 F.2d 718, 723 (11th Cir.1988) (holding that an employee could not establish pretext when the employer, in good faith, believed that the employee engaged in misconduct, regardless whether the employee in fact engaged in the misconduct); *Allocco v. City of Coral Gables,* 221 F.Supp.2d 1317 (S.D.Fla.2002) (granting summary judgment to employer since termination was based on good-faith belief of misconduct, even when it was later determined no misconduct occurred), *aff'd,* 88 Fed.Appx. 380 (11th Cir.2003).

In *EEOC v. Total Sys. Servs., Inc.,* the defendant terminated the plaintiff's employment on the grounds that she had lied in an internal investigation of a supervi-

 

sor's alleged sexual harassment. 221 F.3d at 1175. When no one could corroborate allegations of sexual harassment levied by the plaintiff against one of her supervisors, the employer became convinced that the plaintiff had lied about it and she was terminated as a result. The EEOC argued to the Eleventh Circuit that the defendant, to avoid liability under Title VII, must prove that plaintiff, in fact, lied. *Id.* at 1176. But the Eleventh Circuit disagreed: "we cannot agree that an employer must be forced to prove—presumably in a court of law—more than its good faith belief that a false statement was knowingly made." *Id.* "In the workaday world, not every personnel decision involving a false statement (or a cover-up) has to be treated as something like a trial for perjury. Therefore, an employer, in these situations, is entitled to rely on its good faith belief about falsity, concealment, and so forth." *Id.*

Similarly, an employer is not required to evaluate its employee's driving records by reenacting traffic court proceedings. That Sheppard was ticketed and paid those tickets without protest is sufficient to provide Sears with a good-faith belief that Sheppard caused or contributed to each of the accidents contained in her personnel file. Even if Sears was mistaken and Sheppard was not responsible for some of the accidents in question, Sheppard has not tied Sears's employment decisions to her age or sex. Sheppard asks that her case be sent to a jury to determine whether she was at fault for traffic accidents, but that is not for the jury to decide. Because Sheppard is without any evidence tying Sears's decision to a protected trait, Sears is entitled to summary judgment. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

Accordingly, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment [**DE 31**] is GRANTED.